UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

TIMMY THOMAS                                                                                      PLAINTIFF

V.                                                         CIVIL ACTION NO. 3:13CV1050 DPJ-FKB

DR. MICHAEL REDDIX, ET AL.                                                          DEFENDANTS

ORDER

This § 1983 action is before the Court on the Report and Recommendation [40] of Magistrate Judge F. Keith Ball. After holding an omnibus hearing on March 25, 2014, and considering the parties' briefing on the pending motion for summary judgment, Judge Ball recommended granting the motion for summary judgment [34] filed by Defendants Michael Reddix, Carl Reddix, Maurice McShan, Health Assurance LLC, Ollie Little, Kristen Ashmore, and Patricia Parrott.

Plaintiff Timmy Thomas has filed his Objection [41] to the Report and Recommendation. The Court, having considered the Report and Recommendation, the Objection, and the pertinent authorities, finds that the Report and Recommendation [40] should be adopted as the opinion of this Court and Defendants' motion for summary judgment [34] should be granted.

I.      Report and Recommendation

Thomas is incarcerated at the East Mississippi Correctional Facility (EMCF). He suffers from degenerative disc disease of the lumbar spine, lumbar radiculopathy, and facet syndrome of the lumbar spine. Previously, Thomas was treated with Ultram (tramadol) and ibuprofen. But he claims that since Health Assurance took over healthcare at EMCF, he is no longer receiving adequate treatment for pain.

As explained by Judge Ball, prisoners are entitled to receive adequate medical care under the Eighth Amendment. *Rogers v. Boatright*, 709 F.3d 403, 409–10 (5th Cir. 2013) (citing *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006)). "'A prison official violates the Eighth Amendment's prohibition against cruel and unusual punishment when his conduct demonstrates deliberate indifference to a prisoner's serious medical needs, constituting an unnecessary and wanton infliction of pain.'" *Id.* at 409 (quoting *Easter*, 467 F.3d at 463) (other quotation omitted). "'A prison inmate can demonstrate an Eighth Amendment violation by showing that a prison official refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" *Id.* at 409–10 (quoting *Easter*, 467 F.3d at 464).

Judge Ball found, and the undersigned agrees, that Thomas failed to meet this standard. Thomas's medical records from 2012 and 2013 demonstrate that prison officials consistently prescribed Thomas different medications to control his pain—including ibuprofen, Ultram, Tegretol, Naproxen, Flexeril, and Baclofen—while attempting to balance concerns of opiate dependency, depression, side effects, and interactions with Thomas's antipsychotic drug. *See* R&R at 1–2.

II.   Objection

In his Objection, Thomas focuses on Defendants' alleged delay of medical care. Specifically, Thomas complains of three-month delays in treatment between May and August, 2012 and again between August and November, 2012. Objection at 3, 6. But the medical records

attached to his Objection (as well as Defendants' motion) paint a different picture—a picture that is consistent with Judge Ball's assessment.[1]

    A.    May through August

Backing up a bit, earlier medical records show that on February 7, 2012, Dr. Faulks examined Thomas and talked about his prior use of Ultram. Records [34-1] at 3. Specifically, they discussed that Ultram is associated with seratonin syndrome and decided to discontinue Ultram and use Ibuprofen to treat the pain. *Id.* Dr. Faulks examined Thomas again on February 13, 2012, in response to complaints of pain and added back a prescription for Ultram, in addition to his existing prescriptions for Ibuprofen and Flexeril. *Id.* at 7. Thomas next visited Dr. Faulks on May 7, at which time Dr. Faulks noted that Thomas would continue with his medication. *Id.* at 11.

Plaintiff is correct—there is then a gap of several months before Thomas is seen by Dr. Faulks again. But the only medical services request in evidence from this time period is for dental care on June 24, 2012. *Id.* at 77. In response, Thomas was seen on June 7 and July 12 by the dentist, who listed his medications, including Ultram and Ibuprofen. *Id.* at 12–15. Likewise, Thomas's medication records reflect continuing use of Ultram and Ibuprofen during this time period. *Id.* at 107, 108.

Chronologically, Thomas lodged his next medical request on August 14, 2012, complaining of difficulty urinating (not back pain). *Id.* at 78. Dr. Faulks saw Thomas that same day. *Id.* at 16, 78. During that visit, Dr. Faulks noted that he had ordered Ultram on only one

---

[1] The medical records attached to Defendants' motion consist of 174 pages; the records attached to Thomas's Objection consist of 160 pages. In the interest of completeness, Defendants' submission [34-1] has been examined and is cited herein.

occasion, but the nursing staff had renewed the prescription. *Id.* He opined that Thomas "[does] not need Ultram for this condition because it is not effective after a short period of time," and the notes reflect that Thomas "agrees to have Ultram stopped but will need to be tappered [sic] off." *Id.* Approximately two weeks later, on August 27, Dr. Faulks examined Thomas again and addressed the Ultram use. *Id.* at 17. Dr. Faulks prescribed a decreasing dose of Ultram, noting Thomas "will have many complaints regarding his Ultram in the near future and probably for the next 6 months. The Ultram is not helping the pain level but probably treating his opiate dependency. Will only need NSAID for the actual pain." *Id.* at 17.

In sum, the medical records reflect that while Thomas was not seen by Dr. Faulks from May 7 to August 14, Thomas continued to receive pain medication, including Ultram and Ibuprofen. Moreover, there is no evidence that Thomas requested medical care in relation to back pain during this time period. And when he did request medical attention on August 14, it was due to difficulty urinating—not back pain—and he received medical care that same day.

   B.  August through November

Thomas complains of a second delay between August and November of 2012, but again the records do not provide evidentiary support. Bridget Smith, FNP-BC signed Progress Notes on October 12, 2012, memorializing an overall exam and noting "inmate presents for annual exam, denies any problems or complaints at this time." *Id.* at 18. His next visit with Dr. Faulks was on November 1, 2012. *Id.* at 21. Dr. Faulks noted that Thomas's Ibuprofen had expired and added it again to his medication. *Id.* He also noted that Thomas's "bunk partner has been giving him part of his Ultram." *Id.* Days later, on November 6, Dr. Faulks again saw Thomas, who

"had been doing well until he learned that other [inmates] had been receiving tramadol." *Id.* at 22. Dr. Faulks continued Ibuprofen. *Id.*

Again, Thomas's claim of delay is not supported. While Thomas did not see Dr. Faulks between August 27 and November 1, he did see Bridget Smith for his physical and denied any complaints. Medication records indicate that he continued to receive Ultram or tramadol throughout September. *Id.* at 112. According to the medication records, he did not receive pain medication in October, but that was rectified following the November 1 visit with Dr. Faulks. And there is no evidence that Thomas initiated a medical-attention request during this time frame based on back pain. Instead, Plaintiff's records reflect two requests to see the "psych doctor" in September, *id.* at 80, 81, and a request to the see the eye doctor in September, *id.* at 82. But no requests for treatment due to pain were found.[2]

In brief, Thomas has not show that prison officials refused to treat him, ignored his complaints, or intentionally treated him incorrectly. *Rogers*, 709 F.3d at 409–10. Instead, the evidence indicates that Defendants provided Thomas regular medical care aimed at alleviating his pain, while attempting to discontinue his use of Ultram. The fact that Thomas may have disagreed with the course of treatment does not amount to a constitutional violation. *See Norton v. Dimanzana*, 122 F.3d 286, 292 (5th Cir. 1997). Defendants' motion for summary judgment [34] is granted; Plaintiff's claims against the moving Defendants are dismissed with prejudice.

---

[2] There is a "request form" dated October 31, 2012, which, while difficult to read, appears to state: "Dear Dr. Faulk, I am reminding you like you ask me to to see you I work with the painting crew to the warden. Please call me today. I need to see you. [sic]" *Id.* at 83. Thomas made a notation that this is not his handwriting. In any event, Dr. Faulks examined Thomas the following day.

III.    Dr. Faulks

As for Plaintiff's claims against Defendant Dr. Carl Faulks, who was never served with process, those claims are due to be dismissed without prejudice. In his Objection, Plaintiff complains the United States Marshal's Service is at fault for failing to serve Dr. Faulks. The U.S. Marshal's Service first attempted to serve Dr. Faulks at EMCF in Meridian, Mississippi, on January 17, 2014. The service was returned unexecuted, noting Dr. Faulks is "no longer employed at EMCF." First Unexecuted Return [17]. Plaintiff then filed a motion [22] seeking assistance to locate and serve Dr. Faulks. Judge Ball addressed the issue at the Omnibus Hearing held on March 25, 2014, and counsel for Defendants supplied the last known address for Dr. Faulks. *See* Order [27]; Hearing Transcript [34-2] at 24–25; Notice [28]. A summons was issued on April 2, 2014, specifying an address in Gulfport, Mississippi. The U.S. Marshal's Service again attempted to serve Dr. Faulks on May 29, 2014—but noted the "Building is vacant." Second Unexecuted Return [32]. Plaintiff subsequently filed a Letter on July 9, 2014, indicating that Dr. Faulk was located at an address in Gulfport, Mississippi. Letter [36]. But the address Thomas submitted is the same address to which the unexecuted summons was directed and delivered. As pointed out by Judge Ball in his Order denying Plaintiff's request for assistance with service of process [30], "[t]here is nothing further the Court can do" and "it is ultimately Plaintiff's responsibility to provide a current address for service of process." Order [39] at 1.[3]

---

[3] Plaintiff filed his motion for assistance in completing service [30] after the second summons was issued, but before the summons was returned unexecuted.

6

Thomas relies on the Fifth Circuit's decision in *Rochon v. Dawson*. 828 F.2d 1107 (5th Cir. 1987) (addressing a *pro se* prisoner's failure to serve a physician defendant). There, the Court explained that "a plaintiff proceeding *in forma pauperis* is entitled to rely upon service by the U.S. Marshals and should not be penalized for failure of the Marshal's Service to properly effect service of process, where such failure is through no fault of the litigant." *Id.* at 1110. However, the Court noted that "a plaintiff may not remain silent and do nothing to effectuate service" and "should attempt to remedy any apparent service defects of which a plaintiff has knowledge." *Id.* Citing Rochon's knowledge that service had not been perfected, the Court affirmed dismissal for failure to prosecute due to "inaction and dilatoriness on his part." *Id.*; *see also Smith v. Belle*, 321 F. App'x 838, 845 (11th Cir. 2009) (affirming dismissal for lack of service of process where prisoner, proceeding *ifp*, failed to provide a current address for the defendant); *Clay v. Allen*, 87 F. App'x 1000 (5th Cir. 2004) (per curiam) (finding dismissal of defendant, a court reporter, for lack of service was not an abuse of discretion) (citing *Rochon*); *McWherter v. Collins*, 71 F.3d 875 (5th Cir. 1995) (per curiam) (affirming dismissal where the *pro se* prisoner plaintiff knew of the problem with service and failed to act). Here, the U.S. Marshal's Service attempted to serve Dr. Faulks at the two addresses provided by Thomas and Defendants without success. Thomas knew in July 2014 that service failed, but he took no further action. Dismissal of his claims against Dr. Faulks without prejudice is appropriate.

Accordingly, the Report and Recommendation [40] is adopted as the finding of this Court. Plaintiff's claims against the moving Defendants are dismissed with prejudice; Plaintiff's claims against Dr. Faulks are dismissed without prejudice. A separate judgment will be entered in accordance with Federal Rule of Civil Procedure 58.

**SO ORDERED AND ADJUDGED** this the 22nd day of October, 2014.

                                              s/ *Daniel P. Jordan III*
                                              UNITED STATES DISTRICT JUDGE